## UNITED STATES v. MARKEWICH.

(District Court, S. D. New York. October 8, 1919.)

CONTEMPT ⇐⇒70—INFLAMMATORY SPEECH BY MEMBER OF BAR.

Case considered of a contempt of court committed by a member of its bar in making a public speech, in which he openly imputed corrupt motives to the judge in his action in a pending case and advocated impeachment, where he pleaded guilty to the charge and fully retracted and apologized, and *held* to call for severe censure and transmission of record of proceeding to Bar Association.

Proceeding for contempt by the United States against Samuel Markewich. Defendant censured.

On October 2, 1919, this court made an order that the United States attorney "advise the court by formal information concerning the conduct of one Samuel Markewich on September 18, 1919, at which time he is reported to have made remarks at a public meeting concerning the orders of this court in a pending cause." On October 3, 1919, the United States attorney filed an information against defendant. Defendant voluntarily appeared.

The allegations of the information were, in substance, as follows:

(a) That there was pending in this court a suit docketed as equity consolidated cause No. E 16–151, entitled "American Brake Shoe & Foundry Company, Plaintiff, against New York Railways Company, defendant; Farmers' Loan & Trust Company, Trustee, Complainant, against New York Railways Company, Job E. Hedges, as Receiver of the New York Railways Company, and the American Brake Shoe and Foundry Company, defendants," the pleadings, orders, papers, minutes, and dockets of which are on file in this court.

(b) That Job E. Hedges was appointed receiver and took possession as such.

(c) That on or about September 5, 1919, the receiver petitioned the court for instruction respecting certain so-called storage battery lines.

(d) That on September 12, 1919, the court duly made an order directing the receiver, for the time being and until the further order of the court, to discontinue the operation of said storage battery car lines.

(e) That on September 18, 1919, Samuel Markewich, having knowledge of the above cause and the proceedings therein respecting said storage battery car lines, during the course of a speech at a public meeting of citizens in Public School No. 62, in the community served by said lines, after referring to the situation and conditions which would arise upon the discontinuance of operation of said storage battery car lines, did willfully, knowingly, falsely, and contemptuously say and state in substance and tenor the following: "The people have been discriminated against. They are being trampled upon, and the traction interests have supreme control of the court and of everybody else. The decision regarding the withdrawal of the storage battery cars was not honestly rendered, but was in the interest of the traction trusts. I am in favor of the adoption of the recall of judges. Any judge who discriminates in favor of the railroads and against the common people does not deserve to be recalled. Recall would be entirely too mild a remedy. What ought to be done was what was done in the days of Charles II. The noose! The noose! In those days they hung judges. If that cannot be accomplished at this moment, impeachment is the next step, and Congress should impeach him, and we should ask Congress to impeach him. We should petition Congress with that purpose in mind. A judge who works for public service corporations, instead of the public, should be impeached."

(f) That said remarks tended and were calculated and intended by the said Samuel Markewich to influence the court in its consideration of the said cause of the American Brake Shoe & Foundry Company, plaintiff, against New York Railways Company, defendant; the Farmers' Loan & Trust Company, trustee, complainant, against New York Railways Company, Job E. Hedges, as

⇐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

receiver of New York Railways Company, and the American Brake Shoe & Foundry Company, defendants, then and still pending in this court, to intimidate the court in the exercise of its lawful functions, to incite and cause public disregard of and resistance to the said order and other orders of this court in the said cause, to obstruct the enforcement thereof, and to impede the administration of justice in said cause and in other causes in said court, and generally to bring said court into public ridicule, contumely, and contempt, and to destroy public confidence in said court and in the judicial system of the United States—against the peace of the United States and their dignity, and contrary to the form of the statute in such case made and provided, and in contempt of this court.

To the information defendant interposed a plea of guilty, and admitted in open court the statements attributed to him, except that his recollection of the language in regard to the noose was somewhat different from that set forth in the information. However, defendant did not take any technical position in that regard, but frankly stated that the facts as set forth in the information were correct in substance. Defendant, according to his own statement, has been a member of the New York bar for 17 years, and was admitted to practice in this court on September 27, 1904.

In open court defendant read a full and complete apology, retracting each and every statement, and expressing profound regret that in the excitement of a public speech he gave utterance to statements and sentiments for which there was no justification. In addition, defendant stated without reservation that he did not entertain in any manner any belief in the truth of the utterances thus unhappily indulged in at the public meeting in question.

As further proof of his sincerity, defendant, with the co-operation of honorable counsel, did not seek by means of any technicalities to delay his plea of guilty, nor in any manner to obscure the issues presented by the information. His manner clearly indicated the mental anguish under which he was laboring and his keen appreciation of the humiliating position which his wrongdoing had visited upon him.

Francis G. Caffey, U. S. Atty., and Ben A. Matthews, Asst. U. S. Atty., both of New York City.

John M. Minton, Jr., of New York City, for defendant.

MAYER, District Judge (after stating the facts as above). The court does not entertain any doubt as to the sincerity of defendant in his apology and in his desire to make amends for his wrongful conduct. Such utterances, opposed to good citizenship and to the calling and training of a member of the bar, can only be accounted for in this case by the intoxicating effect which public meetings have on some speakers. There are those who, in search for popularity, find it easier to say what is false than to speak the truth. The conduct of defendant apparently was not deliberately planned, but misstatements of fact and so gross an appeal to passion, inviting disrespect for the court, however impulsively indulged in, can neither be justified, nor excused, nor does defendant seek so to do. Indeed, defendant has indicated an understanding which goes beyond this incident by his observation in his written apology:

"Now is the time, more than ever, when the integrity of and respect for the courts must be upheld by all good citizens; for it is in times like these, when disorder shows its threatening hand, that the courts stand out as the bulwark of orderly and organized society, and unfair and unjust criticism of our courts and judges at this time, above all times, cannot be productive of any good."

In determining the disposition of defendant's plea of guilty, it is desirable to state some fundamental and simple principles:

Courts are not concerned in a personal way with unjust reflections upon judicial action; but, to preserve respect for law and order, courts must at all times vindicate their dignity, however unpleasant the particular task may be. The United States attorney and his assistant have rendered a distinct service in making it clear that contempts of court will not go unheeded, but will be prosecuted promptly and vigorously. Full and fair criticism of courts and their decisions is a right consistent with that freedom which our form of government has secured; but false and inflammatory statements concerning courts and their decisions, calculated to swerve courts from their duty or to deceive and mislead the uninformed, strike at the very foundations of orderly government and must not be tolerated.

Section 268 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163 [Comp. St. § 1245]) provides:

"Sec. 268. The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

In construing this section, Mr. Chief Justice White, in Toledo Newspaper Co. v. United States, 247 U. S. 402, 38 Sup. Ct. 560, 62 L. Ed. 1186, said:

"The provision, therefore, conformably to the whole history of the country, not minimizing the constitutional limitations, nor restricting or qualifying the powers granted, by necessary implication recognized and sanctioned the existence of the right of self-preservation; that is, the power to restrain acts tending to obstruct and prevent the untrammeled and unprejudiced exercise of the judicial power given by summarily treating such acts as a contempt and punishing accordingly."

The learned Chief Justice also points out the duty of courts when he refers to—

"the sacred obligation of courts to preserve their right to discharge their duties free from unlawful and unworthy influences, and, in doing so, if need be, to clear from the pathway leading to the performance of this great duty all unwarranted attempts to pervert, obstruct, or distort judgment."

In the Toledo Newspaper Co. Case, supra, the defendant was a newspaper corporation, but the opinion of the Chief Justice, when referring to the freedom of the press, necessarily covers in principle the same question when the contempt is committed by the spoken, instead of the written, word. Taking up "the asserted inapplicability of the statute, under the assumption that the publications complained of related to a matter of public concern, and were safeguarded from being made the basis of contempt proceedings by the assuredly secured freedom of the press," the Chief Justice said:

"We might well pass the proposition by, because to state it is to answer it, since it involves in its very statement the contention that the freedom of the press is the freedom to do wrong with impunity, and implies the right to frustrate and defeat the discharge of those governmental duties upon the performance of which the freedom of all, including that of the press, depends. The safeguarding and fructification of free and constitutional institutions is the very basis and mainstay upon which the freedom of the press rests, and that freedom therefore does not and cannot be held to include the right virtually to destroy such institutions. It suffices to say that, however complete is the right of the press to state public things and discuss them, that right, as every other right enjoyed in human society, is subject to the restraints which separate right from wrongdoing."

The case at bar is not without value for the opportunity it gives of restating vital and settled principles, adhered to in thought and action by those who believe in and respect a constitutional government founded on law and order. When dealing with a particular defendant, however, the court must take into consideration all the facts and circumstances. It is desirable to make clear that courts are impersonal, and not vindictive, no matter how grave may be the attack on the individual judge concerned.

In the case at bar defendant has made the fullest apology which words can convey. The publicity of the proceeding, the humiliation which has come upon him, both as a citizen and a public officer, the great regret which I am satisfied he genuinely feels, have measured out to him a punishment severe within itself. He has frankly stated that he has learned a lesson bitterly taught, and fine or imprisonment will do no more. As it is, the files of this court will permanently contain the record of his wrongful conduct—an ever-unhappy reminder.

In view of his contrite attitude and his complete apology, it will meet the ends of justice that his conduct, so far as concerns his contempt of court, be severely censured, and such censure is herewith administered. Were the incident merely personal to the court, the matter could stop here; but there is an aspect of the case which cannot officially be passed by. Defendant has been a member of the bar of this court for 15 years and of the bar of the Supreme Court of the state of New York for 17 years. The oath of office administered to an applicant for admission to the bar of this court requires him to demean himself "uprightly and according to law and support the Constitution of the United States." Of all men, none owes a more scrupulous allegiance to law and order than the lawyer. If he advises and encourages disrespect for the courts, and indulges in false statements concerning them, he helps undermine the very government to which he has sworn to be loyal. He thus forgets his obligations, both as a citizen and as a member of the bar. The wrong he does affects not only the courts, but the bar as well.

The New York bar has always striven to preserve its honorable traditions, and has been rightly jealous of its good name. The right to discipline members of the bar rests with the courts, but it has been the established practice that the bar itself shall first investigate acts of a member of the profession, claimed to be violative of his duties and obligations.

It is deemed proper, therefore, that the conduct of the defendant should be brought to the attention of the bar, and to that end the United States attorney is instructed to transmit a copy of the record of these proceedings to the Association of the Bar and to the New York County Lawyers' Association.